UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KIMBERLY ANNE LENNOX,

    Plaintiff,

v.                              Case No:   6:15-cv-2061-Orl-22MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Before the Court is Plaintiff Kimberly Anne Lennox's Complaint (Doc. 1) filed on December 8, 2015. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set forth herein, the Court respectfully recommends that the Commissioner's decision be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

        **A. Eligibility**

    The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On May 29, 2012, Plaintiff filed an application for supplemental security income asserting an onset date of October 2, 2005. (Tr. at 111, 197-200). Plaintiff's application was denied initially on July 25, 2012, and on reconsideration on January 4, 2013. (Tr. at 111, 127). A hearing was held before Administrative Law Judge ("ALJ") Ken B. Terry on May 6, 2014. (Tr. at 36-59). The ALJ issued an unfavorable decision on July 8, 2014. (Tr. at 11-30). The ALJ found Plaintiff not to be under a disability since May 29, 2012, the date the application was protectively filed. (Tr. at 30).

On October 16, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on December 8, 2015. This case is ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 29, 2012, the application date. (Tr. at 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease (DDD) of the cervical and lumbar spines; bilateral carpal tunnel syndrome (CTS); bilateral ulnar neuropathy in the elbows; psoriatic arthritis; fibromyalgia (FM); obesity; a major depressive disorder (MDD); and an anxiety disorder. (Tr. at 13). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. at 16). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b), with additional limitations. Specifically, the claimant has the ability to lift/carry and push/pull 20 pounds occasionally, and 10 pounds frequently; sit for four hours at a time and a total of eight hours during an eight-hour day; and stand and/or walk for two hours at a time and a total of six hours during an eight-hour day. While she is precluded from climbing ropes, ladders and scaffolds, she can perform occasional climbing of stairs and ramps and occasional balancing, stooping, kneeling, crouching and crawling She has no limitations regarding manipulation, vision or communication. She does have environmental limitations precluding concentrated exposure to extreme cold, vibration and work hazards including unprotected heights and dangerous machinery. Mentally, she is precluded from performing complex tasks but is fully

3

capable of performing simple routine tasks consistent with unskilled work with concentration on those tasks for two-hour periods with normal breaks and a lunch.

(Tr. at 18-19). The ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. at 28). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff is capable of performing. (Tr. at 29). After considering the vocational expert's testimony, the ALJ found that Plaintiff was able to perform the jobs of garment sorter (DOT # 222.687-014); fingerprint clerk I (DOT # 209.367-026); and ticket taker (DOT # 344.667-010.)[2] (Tr. at 29). The ALJ concluded that Plaintiff has not been under a disability from May 29, 2012, the date the application was protectively filed. (Tr. at 30).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises the following two issues:

1) The ALJ failed to apply the correct legal standards when he found severe hand limitations but then failed to account for these limitations at steps four and five of the sequential evaluation process.

2) The ALJ failed to properly evaluate Plaintiff's allegations of pain and limitations.

(Doc. 19 at 9, 13). The Court will consider each issue in turn.

### A. Hand Limitations in RFC

Plaintiff argues that the ALJ failed to account for the limitations associated with carpal tunnel syndrome in the RFC. (Doc. 19 at 9-13). Specifically, Plaintiff asserts that the ALJ erred in finding that Plaintiff had no manipulation limitations. (Doc. 19 at 11). Further, when presenting the hypothetical to the vocational expert, Plaintiff claims that the ALJ erred in failing to account for Plaintiff's manipulation limitations. (Doc. 19 at 12-13). In response, the Commissioner contends that the ALJ properly considered the relevant evidence in assessing Plaintiff's RFC. (Doc. 20 at 4-8).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination

of a claimant's RFC is within the authority of the ALJ and, along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).

In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004); 20 C.F.R. § 404.1520(e). An ALJ must consider all of a claimant's physical and mental impairments that are sufficiently severe in combination with all of a claimant's impairments. *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005). The Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Plaintiff argues that the ALJ erred in his consideration of Plaintiff's carpal tunnel syndrome diagnosis. Plaintiff asserts that the ALJ found Plaintiff to have been diagnosed with bilateral carpal tunnel syndrome and at step two found carpal tunnel syndrome to be a severe impairment. (Doc. 19 at 10). Plaintiff claims that even though the ALJ found Plaintiff's carpal tunnel syndrome to be a severe impairment that causes significant limitations, the ALJ failed to include any limitations in Plaintiff's RFC determination. (Doc. 19 at 10). Moreover, Plaintiff argues that the ALJ found Plaintiff to have no manipulation limitations. (Doc. 19 at 11-12).

Plaintiff relies, almost exclusively, on her own subjective testimony to support her claim that her carpal tunnel syndrome renders her unable to perform work. (*See* Doc. 19 at 10-11). In Plaintiff's argument, Plaintiff only cites to two brief references to medical evidence in the ALJ's decision. (*See* Doc. 19 at 10). These two references are: (1) Plaintiff refers to the ALJ's finding

6

that Plaintiff was diagnosed with bilateral carpal tunnel syndrome; and (2) Plaintiff refers to the ALJ acknowledging Plaintiff had positive Phalen's sign and Tinel's sign. (Doc. 19 at 10; citing Tr. at 20, 25). The balance of the arguments relies on Plaintiff's subjective complaints, including her testimony at the hearing that her worst physical problems concerned her hands and arms. (Doc. 19 at 11; Tr. at 69).[3] Further, Plaintiff also testified that it was difficult for her to complete simple tasks such as brushing her teeth, shaving, and cooking. (Doc. 19 at 11; Tr. at 60-61). Plaintiff testified that she drops her toothbrush, gets shooting pain in her hands, and her hands fall asleep. (Doc. 19 at 11; Tr. at 60-61).

In the decision, at step two the ALJ found that Plaintiff had, *inter alia*, the severe impairment of bilateral carpal tunnel syndrome. (Tr. at 13). However, in the RFC determination at step four, the ALJ found that Plaintiff "has no limitations regarding manipulation, vision or communication." (Tr. at 18). Further, the ALJ determined that Plaintiff was able to lift/carry and push/pull 20 pounds occasionally, and 10 pounds frequently. (Tr. at 18).

An ALJ does not err solely because he finds an impairment "severe" at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC. *See Davis v. Comm'r of Soc. Sec.*, No. 6:12-CV-1694-ORL-36, 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013) (citations omitted). Thus, the Court must consider the ALJ's entire decision to determine if the ALJ erred in failing to include manipulation limitations in Plaintiff's RFC.

The ALJ noted that on September 4, 2012, upon a physical examination, Plaintiff was found to have positive bilateral Tinel's and Phalen's signs. (Tr. at 20). Further, the ALJ cited to Dr. Jaleel's September 26, 2010 records showing Plaintiff was diagnosed with bilateral carpal

---

[3] At the hearing, Plaintiff was asked, "Is the worst physical problem is it – is it the hands and arms?" (Tr. at 69). Plaintiff responded, "Yeah. My – it's my right neck, the shoulder blade, and it goes down into my right hand." (Tr. at 69).

7

tunnel syndrome. (Tr. at 20, 25). The ALJ found that "[n]one of the claimant's treating physicians have identified any specific job-related limitations." (Tr. at 24).

The Court reviewed the medical records cited by the ALJ. On July 18, 2012, Plaintiff saw Fiaz Jaleel, M.D. at Florida Pain Solutions, LLC complaining of chronic pain, including pain in the neck, lower back, and left elbow. (Tr. at 648). Dr. Jaleel diagnosed Plaintiff with, *inter alia*, carpal tunnel syndrome. (Tr. at 650). Dr. Jaleel prescribed medication for the pain and numbness in Plaintiff's hands. (Tr. at 650). Plaintiff returned on August 1, 2012, for chronic pain, including pain in her hands. (Tr. at 646). Dr. Jaleel found Plaintiff's upper extremities "revealed a vaguely positive Tinel's signs for the median nerve at the wrist. She had a positive Tinel's sign for the ulnar nerve at the elbow bilaterally, but more so on the left side. Strength testing in the hands was within normal limits." (Tr. at 647). Dr. Jaleel prescribed a different medication for the numbness, tingling, and pain in Plaintiff's upper extremities. (Tr. at 647). On August 29, 2012, Plaintiff returned to Dr. Jaleel reporting continued pain, numbness, and tingling in her hands. (Tr. at 644). Dr. Jaleel administered two injections, one in the left ulnar nerve area and one in the right carpal canal. (Tr. at 645). Plaintiff stated that these injections appeared to help. (Tr. at 645).

On September 4, 2012, Plaintiff visited the Central Florida Family Health Center in Sanford, Florida and a physical examination resulted in positive Phalen and Tinel signs bilaterally. (Tr. at 827). On September 26, 2012, Plaintiff saw Dr. Jaleel and reported that the injections helped. (Tr. at 644). On Plaintiff's October 31, 2012 visit, Plaintiff did not report any problems with her hands. (Tr. at 643). Thereafter, Plaintiff saw Dr. Jaleel for various appointments through March 26, 2014. (Tr. at 720-27). During this time period, Plaintiff was assessed with carpal tunnel syndrome problems only on November 15, 2013. (Tr. at 719-20).

8

Dr. Jaleel changed Plaintiff's prescription and asked Plaintiff to use a carpal tunnel brace on her right hand every night for about six weeks and then on an as-needed basis. (Tr. at 720).

In rendering his decision, the ALJ relied on and afforded significant weight to the January 4, 2013, Residual Functional Capacity Assessment of Efren Baltazar, M.D., a state agency physician. (Tr. at 25, 120-26). The Residual Functional Capacity assessment indicated that Plaintiff is able to occasionally lift and/or carry including pulling 20 pounds; and frequently lift and/or carry including pulling 10 pounds. (Tr. at 120-21).[4] Dr. Baltazar determined that Plaintiff has no manipulation limitations. (Tr. at 122).

The Court finds that the medical records show that Plaintiff was diagnosed with carpal tunnel syndrome, but the medical records fail to show that Plaintiff has any limitations as to this diagnosis. Moreover, a diagnosis alone "is insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012), report and recommendation adopted, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n.6 (11th Cir. 2005)). The medical records show that Dr. Jaleel found Plaintiff's strength in her hands was normal. (*See* Tr. at. 647). Further, Dr. Jaleel reported that after injections and medication, Plaintiff's symptoms improved. (*See* Tr. at 644, 645). Plaintiff failed to cite to any medical evidence in support of her position. Thus, the Court finds that the medical evidence supports the ALJ's decision that Plaintiff did not have manipulation limitations.[5]

---

[4] "Occasionally" means "cumulatively 1/3 or less of an 8[-] hour day" and "frequently" means "cumulatively more than 1/3 up to 2/3 of an 8[-] hour day." (Tr. at 120-21).

[5] Plaintiff argues that "[o]n top of all this, the ALJ also found severe fibromyalgia, arthritis, and ulnar neuropathy (Tr. 13). These impairments could further impact the use of the hands." (Doc. 19 at 11). Plaintiff fails to cite to any medical evidence or evidence of record to support this contention. Absent medical evidence, the Court finds this argument to be without merit.

In addition, the ALJ also extensively considered Plaintiff's subjective complaints concerning issues with her hand, including forms completed in June 2012 and November 2012 by Plaintiff and her boyfriend, as well as Plaintiff's testimony at the hearing.  (*See*, *e.g.*, Tr. at 19-20, 23, 24, 25).  The forms completed by Plaintiff and her boyfriend indicated that Plaintiff was able to:  take care of her own hygiene with some physical difficulties; prepare simple meals; wash dishes; do some laundry; do some light housecleaning with frequent breaks; sweep floors; drive; go grocery shopping; pay bills; read daily, including books; watch television; crochet; knit; solve puzzles; talk to her mother by telephone daily for 5 minutes at a time; and live with her boyfriend and her children.  (Tr. at 23).  The ALJ also summarized Plaintiff's testimony as to her subjective complaints concerning her hands, including her pain and numbness and difficulty grasping and fingering.  (Tr. at 20).  The ALJ acknowledged that Plaintiff testified that she needed help from her daughter to button her clothes, help from her boyfriend to cut her meat, use of compression gloves, and use of a hand brace at night for her dominant right hand.  (Tr. at 20).  In addition, at the hearing, the ALJ observed that Plaintiff's right hand was shaking.  (Tr. at 26).  The ALJ found Plaintiff's subjective complaints concerning intensity, persistence, and the limiting effects of her symptoms to be not fully credible.  The ALJ compared Plaintiff's subjective complaints with Plaintiff's medical records and daily activities listed above to determine that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. at 24-25).

Thus, in addition to the medical records, the ALJ thoroughly considered Plaintiff's subjective complaints concerning her manipulation abilities and her activities of daily living in formulating Plaintiff's RFC.  Accordingly, upon consideration of all of the evidence of record,

the Court finds that the ALJ's decision as to Plaintiff's RFC to be supported by substantial evidence.

Plaintiff also raises the issue that the hypothetical presented to the vocational expert failed to include all of Plaintiff's limitations. (Doc. 19 at 12-13). Specifically, Plaintiff asserts that the hypothetical to the vocational expert should have included manipulation limitations based on Plaintiff's carpal tunnel syndrome diagnosis. (Doc. 19 at 12). In response, the Commissioner argues that the hypothetical posed to the vocational expert included all of the limitations the ALJ found that were supported by the record. (Doc. 20 at 8).

If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winchell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). Nevertheless, an ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported by the record. *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). In the instant case, the ALJ found that Plaintiff had no manipulation limitations and, thus, the ALJ was not required to include any manipulation limitations in the hypothetical presented to the vocational expert.[6] The Court finds that the ALJ did not err in the hypothetical presented to the vocational expert and did

---

[6] When counsel for Plaintiff was questioning the vocational expert, counsel amended the ALJ's hypothetical to limit Plaintiff to occasional manipulative limitations. (Tr. at 95). Plaintiff argues that some of the jobs listed by the vocational expert require frequent handling, which Plaintiff is unable to perform. (*See* Doc. 19 at 13). In this case, the ALJ found that Plaintiff had no manipulation limitations and, thus, this testimony limiting Plaintiff to occasional handling was not considered by the ALJ in his decision.

not err in relying on the testimony of the vocational expert in determining whether Plaintiff was able to perform other work.

### B. Evaluation of Pain

Plaintiff argues that the ALJ failed to evaluate properly Plaintiff's allegations of pain and her related limitations. (Doc. 19 at 13). Plaintiff acknowledges that the ALJ discussed various reasons for finding Plaintiff's testimony not credible, but claims that the ALJ failed to present specific and adequate reasons as to why he discredited Plaintiff's allegations of pain, especially regarding her hand limitations. (Doc. 19 at 14-15). The Commissioner asserts that the ALJ properly considered Plaintiff's subjective complaints of disabling symptoms together with the record evidence in determining that Plaintiff's statements were not fully credible and in determining Plaintiff's RFC. (Doc. 20 at 8).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain[,] or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225

(citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x. at 28 (citing 20 C.F.R. § 404.1529(c)(3)). Although housework and light cooking are minimal daily activities and are not dispositive evidence of a claimant's ability to perform work, an ALJ may consider a claimant's daily activities in evaluating a claimant's credibility as to testimony regarding symptoms. *Vennette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998); *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i), (iv)).

> In the instant case, the ALJ determined that:
>
> after considering the evidence of record, the undersigned finds that there is no reasonable medical basis for the intensity, persistence, and limiting effects of the claimant's alleged plantar fasciitis, gout, hypertension, or bronchitis/dyspnea symptoms. The undersigned further finds that the claimant's medically determinable severe impairments (listed in Finding 2 above) could reasonably be expected to cause her alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the evidence above and the residual functional capacity assessment below.

(Tr. at 23).

The ALJ thoroughly reviewed Plaintiff's medical records. (*See* Tr. at 20-28). The ALJ considered Plaintiff's MRI of May 1, 2012 showing degenerative disc disease at L2-L3 and L4-L5; and the MRI of August 13, 2012 of the cervical spine revealing degenerative disc disease of the C5-C6 level. (Tr. at 20). In addition, the ALJ considered the medical report of Dr. J. Sheikh

on June 19, 2012 indicating that Plaintiff had fibromyalgia and Dr. Villegas's records of June 29, 2012 that Plaintiff had a history of gout in addition to fibromyalgia.  (Tr. at 20).  The ALJ noted Plaintiff's diagnoses of chronic neck pain, chronic lower back pain, left elbow pain, and carpal tunnel syndrome.  (Tr. at 20).  Moreover, the ALJ reviewed and considered Plaintiff's medical records chronologically from June 2012 through April 2014.  (*See* Tr. at 25-26).  Further, the ALJ considered Plaintiff's medications, finding that they eased her pain, but caused some adverse side effects.  (*See* Tr. at 24).

In support of his credibility finding, the ALJ noted that on September 2, 2012, the records indicate that Plaintiff had age-appropriate gait and station, normal alignment, and mobility of her head and neck, normal strength, normal range of motion of her bilateral lower extremities, no tenderness or joint enlargement, and no obvious gross impairment of motor control.  (Tr. at 20). Further, on February 21, 2013, the ALJ indicated that the medical records show Plaintiff had age-appropriate gait and station and no obvious gross impairment of motor control.  (Tr. at 20). Then, the ALJ noted that the records indicate that on March 19, 2014, Plaintiff had a full range of motion of her neck, age-appropriate gait and station, no obvious gross impairment of motor control, and no weakness, tremors, spasticity, fasciculations, wasting, or hypertrophy.  (Tr. at 20).  Additionally, the ALJ noted that on January 9, 2013, November 15, 2013, and March 24, 2014, Dr. Jaleel found Plaintiff with negative leg raises and only moderate lumbar tenderness despite having very painful lumbar extension.  (Tr. at 20-21).  Even though Plaintiff had decreased range of motion of her cervical spine, the ALJ noted that on April 17, 2014, Plaintiff reported that she did not experience chronic pain and was not currently experiencing pain.  (Tr. at 21).

14

In further support of the ALJ's finding that Plaintiff was not fully credible, the ALJ noted that Plaintiff has mild-to-moderate spondylosis of the cervical spine, but the MRI of the lumbar spine failed to show any evidence of severe canal stenosis, disc herniations, or significant cord compressions. (Tr. at 24). The ALJ noted that Plaintiff was diagnosed with "most likely fibromyalgia" but noted that none of the medical providers had identified any specific job-related limitations. (Tr. at 24). Further, the ALJ noted that some of Plaintiff's activities are inconsistent with her total inability to work. (Tr. at 24). The ALJ cited to Plaintiff's testimony that she was able to clean her house when she is manic; cook; do laundry; shop for groceries; take care of two dogs and two cats; read; and crochet. (Tr. at 24-25). The ALJ found that "while it is reasonable to conclude that the claimant has some limitations, the evidence as a whole does not substantiate any cause for such debilitating limitations as described by the claimant that would preclude all work activity, including substantial gainful activity, since the application date." (Tr. at 25).

The Court finds that the ALJ thoroughly reviewed Plaintiff's medical records, the other evidence of record, and Plaintiff's testimony at the hearing. The ALJ considered Plaintiff's activities of daily living, the nature and intensity of her pain and other symptoms, the effects of Plaintiff's medications, Plaintiff's treatments, and other factors and functional limitations. The ALJ did not rely solely on Plaintiff's activities of daily living in finding Plaintiff's statements of intensity, persistence, and limited effects of her symptoms not fully credible. Thus, the Undersigned finds that the ALJ's determination that Plaintiff is not fully credible is supported by substantial evidence and that the ALJ did not err in determining that Plaintiff was not fully credible.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

Undersigned finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

      **IT IS RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).

Respectfully recommended in Chambers in Ft. Myers, Florida on January 11, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties