# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KIMBERLY ANNE LENNOX,**

**Plaintiff,**

**v.**                                              **Case No:   6:15-cv-2061-Orl-22MRM**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

## ORDER

This cause is before the Court on Plaintiff Kimberly Anne Lennox's ("Plaintiff") Complaint for review of the final decision of the Commissioner of Social Security (the "Commissioner") denying benefits to Plaintiff.

The United States Magistrate Judge submitted a report recommending that the decision of the Commissioner be AFFIRMED. Doc. 21.

After an independent *de novo* review of the record in this matter, including the objections filed by Kimberly Anne Lennox (Doc. 22)[1], the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendation.

## I. BACKGROUND

The Court briefly sets forth the relevant procedural history. In 2012, Plaintiff filed an application for supplemental security income, alleging disability beginning on October 2, 2005. R. at 111, 197-200. After her applications were denied initially and on reconsideration, on May 6, 2014, an Administrative Law Judge ("ALJ") held a hearing at Plaintiff's request. R. 36-59, 111, 127. On July 8, 2014, the ALJ issued a decision finding Plaintiff not disabled. R. at 11-30. Based

---

1 The Commissioner did not file a response to the Objections.

on the ALJ's residual functional capacity ("RFC") assessment and the testimony of the vocational expert, the ALJ found that Plaintiff could perform other work available in the national economy. R. 29. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review. R. 1-5. Thereafter, on December 8, 2015, Plaintiff filed her Complaint in this Court. Doc. 1.

## II. LEGAL STANDARDS

A. *Review of Magistrate Judge's Report & Recommendation*

In the Eleventh Circuit, a district judge may accept, reject or modify a magistrate judge's report and recommendation after conducting a careful and complete review of the findings and recommendations. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982), *cert. denied*, 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). A district judge must conduct a *de novo* review of the portions of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1) (C). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir.1990) (citing H.R.Rep. No. 94–1609, 94th Cong., 2nd Sess., *reprinted in* 1976 U.S.Code Cong. & Admin. News 6162, 6163). A district judge reviews legal conclusions *de novo*, even in the absence of an objection. *See Cooper–Houston v. Southern Ry.*, 37 F.3d 603, 604 (11th Cir.1994).

B. *Social Security Sequential Evaluation Process*

When an ALJ makes a disability determination, the ALJ follows a five-step evaluation process: (1) whether Plaintiff is currently performing substantial gainful activity; (2) whether Plaintiff has a severe impairment; (3) whether the severe impairment meets or exceeds an impairment in the listings; (4) whether the Plaintiff can perform her past relevant work; and (5) whether Plaintiff can perform other jobs that exist in the national economy. *See Wright v. Comm'r*

*of Soc. Sec.*, 327 F. App'x 135, 136–37 (11th Cir. 2009) (per curiam) (citations omitted). The Plaintiff has the burden of proof on the first four steps; the Commissioner carries the burden on the fifth step. *Id.* at 137 (citation omitted).

When reviewing the ALJ's findings of fact, the Social Security Act mandates that "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (citation omitted). Substantial evidence is evidence that is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Id.* at 1560 (citations omitted). The Court also reviews *de novo* the ALJ's conclusions of law. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). If the ALJ fails to apply the correct law or provide the Court with sufficient reasoning for determining that the proper legal analysis was conducted, then the Court must reverse. *Id.* (citation omitted).

### III. PLAINTIFF'S OBJECTIONS

Plaintiff's objections are limited to the findings of the Administrative Law Judge ("ALJ") regarding her subjective statements of pain and limitations in her arms and hand from carpal tunnel syndrome. Doc. 22 at 2-3. At step two of the sequential evaluation, the ALJ found that Plaintiff suffered from bilateral carpal tunnel syndrome and bilateral ulnar neuropathy in the elbows (in addition to other impairments about which Plaintiff does not raise an objection). Doc. 21 at 2-3 (citing R. 13). At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work based on certain limitations, but with "no limitations regarding manipulation." *Id.* at 3-4 (citing R. 18-19). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff was capable of performing including

garment sorter, fingerprint clerk, and ticket taker. *Id.* at 4 (R. at 29). The ALJ accordingly

concluded that Plaintiff had not been under a disability from May 29, 2012. *Id* (R. at 30).

Plaintiff contends the ALJ erred in finding at step two of the sequential evaluation process

that her carpal tunnel syndrome was a severe impairment (R. 13), but then discounted her

testimony regarding her hand limitations in assessing her credibility. As the Magistrate Judge

found, "Plaintiff relies, almost exclusively, on her own subjective testimony to support her claim

that her carpal tunnel syndrome renders her unable to perform work." Doc. 21 at 6 (citing Doc. 19

at 10-11). The Magistrate Judge discussed the relevant medical records related to Plaintiff's arm

and hand complaints at some length and determined that her condition had improved:

> The ALJ noted that on September 4, 2012, upon a physical examination,
> Plaintiff was found to have positive bilateral Tinel's and Phalen's signs. (Tr. at 20).
> Further, the ALJ cited to Dr. Jaleel's September 26, 2010 records showing Plaintiff
> was diagnosed with bilateral carpal tunnel syndrome. (Tr. at 20, 25). The ALJ found
> that "[n]one of the claimant's treating physicians have identified any specific job-
> related limitations." (Tr. at 24).

> The [Magistrate Judge has] reviewed the medical records cited by the ALJ.
> On July 18, 2012, Plaintiff saw Fiaz Jaleel, M.D. at Florida Pain Solutions,
> LLC complaining of chronic pain, including pain in the neck, lower back, and left elbow.
> (Tr. at 648). Dr. Jaleel diagnosed Plaintiff with, inter alia, carpal tunnel syndrome.
> (Tr. at 650). Dr. Jaleel prescribed medication for the pain and numbness in
> Plaintiff's hands. (Tr. at 650). Plaintiff returned on August 1, 2012, for chronic
> pain, including pain in her hands. (Tr. at 646). Dr. Jaleel found Plaintiff's upper
> extremities "revealed a vaguely positive Tinel's signs for the median nerve at the
> wrist. She had a positive Tinel's sign for the ulnar nerve at the elbow bilaterally,
> but more so on the left side. Strength testing in the hands was within normal limits."
> (Tr. at 647). Dr. Jaleel prescribed a different medication for the numbness, tingling,
> and pain in Plaintiff's upper extremities. (Tr. at 647). On August 29, 2012, Plaintiff
> returned to Dr. Jaleel reporting continued pain, numbness, and tingling in her hands.
> (Tr. at 644). Dr. Jaleel administered two injections, one in the left ulnar nerve area
> and one in the right carpal canal. (Tr. at 645). Plaintiff stated that these injections
> appeared to help. (Tr. at 645).

> On September 4, 2012, Plaintiff visited the Central Florida Family Health
> Center in Sanford, Florida and a physical examination resulted in positive Phalen
> and Tinel signs bilaterally. (Tr. at 827). On September 26, 2012, Plaintiff saw Dr.
> Jaleel and reported that the injections helped. (Tr. at 644). On Plaintiff's October
> 31, 2012 visit, Plaintiff did not report any problems with her hands. (Tr. at 643).
> Thereafter, Plaintiff saw Dr. Jaleel for various appointments through March 26,
> 2014. (Tr. at 720-27). During this time period, Plaintiff was assessed with carpal

tunnel syndrome problems only on November 15, 2013. (Tr. at 719-20). Dr. Jaleel changed Plaintiff's prescription and asked Plaintiff to use a carpal tunnel brace on her right hand every night for about six weeks and then on an as-needed basis. (Tr. at 720).

In rendering his decision, the ALJ relied on and afforded significant weight to the January 4, 2013, Residual Functional Capacity Assessment of Efren Baltazar, M.D., a state agency physician[2]. (Tr. at 25, 120-26). The Residual Functional Capacity assessment indicated that Plaintiff is able to occasionally lift and/or carry including pulling 20 pounds; and frequently lift and/or carry including pulling 10 pounds. (Tr. at 120-21). Dr. Baltazar determined that Plaintiff has no manipulation limitations. (Tr. at 122).

The Court finds that the medical records show that Plaintiff was diagnosed with carpal tunnel syndrome, but the medical records fail to show that Plaintiff has any limitations as to this diagnosis. Moreover, a diagnosis alone "is insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012), *report and recommendation adopted*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n.6 (11th Cir. 2005)). The medical records show that Dr. Jaleel found Plaintiff's strength in her hands was normal. (See Tr. at 647). Further, Dr. Jaleel reported that after injections and medication, Plaintiff's symptoms improved. (See Tr. at 644, 645). Plaintiff failed to cite to any medical evidence in support of her position. Thus, the Court finds that the medical evidence supports the ALJ's decision that Plaintiff did not have manipulation limitations.

Doc. 21 at 7-9 (footnotes omitted).

Plaintiff argues that the Magistrate Judge erred in recommending affirmance of the ALJ's decision based on the medical records the Magistrate Judge cited in support of the ALJ's credibility finding because these specific records related to Plaintiff's allegations of "back and neck pain," and not her hand and arm pain. Doc. 21 at 2-3. The Court has reviewed all of the medical records cited by the Magistrate Judge, particularly those from Dr. Jaleel at Florida Pain Solutions, and they do support the Magistrate Judge's determination that, after receiving injections in late 2012, Plaintiff's complaints regarding carpal tunnel pain were non-existent; her sporadic complaints of arm pain related to "radiating pain" from her neck and upper back down her right side, including

---

2 Dr. Baltazar's January 4, 2013 Residual Functional Capacity opinion was based on a review of the medical records, including Dr. Jaleel's records from August, September, and October 2012. *See* R. 122.

in her right arm, when she decided to stop taking her medicine "several months" before. *See* R. 719 (November 15, 2013). Dr. Jaleel changed and increased the medication to "help with the radiating pain down the right arm"; he recommended use of a carpal tunnel brace to her right hand every night for about six weeks and then on an as-needed basis. R. 720. During the same time period she reported she had "radiating pain" in the right arm "occasionally." R. 722 (September 4, 2013), 723 (May 22, 2013); *see also* R. 725 (February 6, 2013) ("occasional" radiating pain in right arm, "not as much" on left side).

The records from Florida Pain Solutions are not exclusively "neck and back pain" records as Plaintiff argues. Rather, they are records from the doctor treating her for chronic pain and, although Dr. Jaleel was initially treating Plaintiff for pain from carpal tunnel syndrome, the records reflect that Plaintiff stopped complaining about carpal tunnel syndrome symptoms and mentioned only "occasional" right arm symptoms which were related to her neck and back issues that Dr. Jaleel was also treating. As the Magistrate Judge accurately noted: "Dr. Jaleel reported that after injections and medication, Plaintiff's symptoms improved." Doc. 21 at 9 (citing R. 644-45: "The patient reported that these injections seem to help, especially with the carpal canal injection."). Based on these medical records, the ALJ properly discounted Plaintiff's subjective testimony related to limitations from Plaintiff's alleged arm and hand pain, and his omission of "manipulative" limitations from the RFC is supported by substantial evidence.

Therefore, it is **ORDERED** as follows:

1.      The Report and Recommendation filed January 11, 2017 (Doc. 21), is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2.      Plaintiff's objections are **OVERRULED.**

3.      The final decision of the Commissioner of the Social Security Administration denying the claim for Disability Insurance Benefits and Supplemental Security Income benefits is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

4.      The Clerk is directed to enter judgment, accordingly, and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on February 21, 2017.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record